ALBERS *v.* TAFT.

1. CREDITORS' SUIT—PRIMA FACIE CASE.

Judgment creditor in suit commenced by bill in aid of execution established a *prima facie* case by proof of judgment, the execution and levy indorsed thereon and the conveyance of nonexempt farm property by debtor to his son, executed and recorded within three months after plaintiff recovered a judgment in Illinois (3 Comp. Laws 1929, § 14617).

2. SAME—INSOLVENCY OF DEBTOR—SETTING ASIDE CONVEYANCE.

Transfer of farm to debtor's son *held,* to have rendered debtor insolvent unless conveyance is set aside in proceeding commenced by bill in aid of execution (3 Comp. Laws 1929, § 14617).

3. SAME—DEFENDANT'S BURDEN OF PROOF—EVIDENCE.

In suit commenced by bill in aid of execution in which plaintiff had established a *prima facie* case in accordance with the statute, record *held,* to sustain finding of trial court that defendant grantee of farm property, son of the judgment debtor, had failed to sustain burden of proving that transaction, which took place shortly after plaintiff recovered a judgment against the father in Illinois, was *bona fide,* especially where son failed to produce family accounts within his control to corroborate his testimony and neither the debtor nor his wife were called as witnesses (3 Comp. Laws 1929, § 14617).

Appeal from Berrien; Evans (Fremont), J. Submitted November 7, 1938. (Docket No. 118, Calendar No. 40,152.) Decided February 2, 1939.

Bill in aid of execution by Charles H. Albers, receiver of Phillip State Bank & Trust Company, an Illinois corporation, against John H. Taft and John

A. Taft to set aside a conveyance. From decree rendered, defendant John A. Taft appeals. Affirmed.

*Francis J. Miller (Markman, Donovan & Sullivan,* of counsel), for plaintiff.

*W. M. Cunningham,* for defendant John A. Taft.

Chandler, J. Plaintiff, as receiver of Phillip State Bank & Trust Company, obtained a judgment in the appellate court of Illinois on May 6, 1935, against Frank J. Durhan and John H. Taft, the latter being one of the defendants herein, for the sum of $23,000.70, and costs to be taxed in the amount of $284.95. An execution was issued which was returned *nulla bona.* Later, suit was brought on said judgment in the circuit court for the county of Berrien and plaintiff, on January 21, 1936, obtained a judgment against John H. Taft for $24,141.96, and costs taxed in the sum of $40.40.

On July 25, 1935, one of the defendants herein, John Ailes Taft, recorded with the register of deeds of Berrien county a deed dated June 8, 1935, from John H. Taft and Eva Taft, his wife, to John Ailes Taft, purporting to convey a certain farm located in Berrien county, the grantee in said deed being the son of John H. Taft.

On January 29, 1936, the judgment remaining in full force and effect and being wholly unsatisfied, the plaintiff, in order to obtain satisfaction, caused a writ of *fieri facias* to be issued out of the circuit court for the county of Berrien for the amount of the judgment aforesaid, and the sheriff by virtue thereof levied upon the lands described in the deed above mentioned. On February 21, 1936, plaintiff filed the bill in aid of execution herein for the purpose of

setting aside the conveyance and to have the premises subjected to levy under the execution, the proceedings being instituted under the provisions of 3 Comp. Laws 1929, § 14617 (Stat. Ann. § 27.1581). Defendant John H. Taft entered no appearance, and neither he nor his wife gave any testimony herein. Plaintiff established a *prima facie* case by proof of the judgment, the execution and levy indorsed thereon and the conveyance of which complaint is made.

The questions presented are:

(1) Was the defendant John H. Taft insolvent at the time of the alleged conveyance of the property, or did the transfer thereof render said defendant insolvent?

(2) Did the appellant meet the burden of proof imposed upon him by 3 Comp. Laws 1929, § 14617 (Stat. Ann. § 27.1581), by producing creditable evidence showing that the transaction in question was in all respects *bona fide?*

The defendant, John Ailes Taft, contends that the record shows solvency of his father on the date of the conveyance. On this question he testified substantially as follows: "I would not consider him (John H. Taft) insolvent." The defendant called as a witness plaintiff's Illinois attorney, Charles E. Loy, who testified that he had signed two creditors' bills in Illinois directed against John H. Taft in which he swore upon information and belief that he was worth $100,000 or more, said affidavits being based upon his belief that John H. Taft had concealed all of his assets. Mr. Loy further testified that he had occasion to take out three executions against John H. Taft on the Illinois judgment, and had located one piece of property, the record title to the same being in the name of John H. Taft and that this property was sold for $4,500. The trial

court found that the debtor either was not able to pay his debts from his own means, or that his property was in such a situation that his debts could not be collected out of it by legal process, and, therefore, that he was insolvent at the time of the conveyance of the property in question to his son. After a careful review of the record, we are convinced that the transfer of the farm in question rendered said defendant John H. Taft insolvent, and placed all of his property beyond the reach of his creditors, unless the conveyance involved is set aside in a proceeding of this nature.

It appears from the record that the defendants had been intimately associated in extensive business transactions from about the year 1921 up to the time of the hearing; that in 1921 defendant John H. Taft was, with his brother, engaged in the package medicine business under the name of Dr. Pierre Chemical Company; that John Ailes Taft in the same year purchased a 20 per cent. interest in his father's business for $11,000, giving his note and paying therefor out of the business over a period of two years. The son testified that in 1928 he had an income of some $30,000 from the business and that his father's income from the same source was in excess of that amount. The business proved very profitable from 1922 up to and including 1928. In 1930, a corporation was formed and John H. Taft conveyed some of his stock to his wife, although it was not at that time transferred on the books of the company into her name. Later he disposed of his holdings from time to time until finally the son became the actual owner of practically all of the corporate stock, only five shares of the same being of record in the name of John H. Taft and these in

reality belonged to the son. The facts clearly indicate that the corporation was a family affair. Many of the transactions of various kinds between the father, the son, and the mother were carried on the corporation books by means of debits and credits. The son was active in the management of the corporation and was familiar with his father's other business ventures in all of which he participated. It further appears from the testimony of the son that John H. Taft became indebted to Eva Taft, his wife, most of which appears to have been incurred by him in collecting dividends and profits which should have been received by his wife. It was also claimed by John Ailes Taft that some time prior to the year 1926 he and his father were engaged in the purchase of receiver's certificates in an oil venture in which considerable profit was made, and that on February 1, 1926, his father gave him a note in the amount of $4,300 representing his share of the profits; that said note never was paid until October, 1935; and that at the time of the transaction involving the conveyance of the Berrien county property, his father offered to sell him the farm with stock and tools for the sum of $5,500 and take a note as payment therefor. Notwithstanding the fact that he held his father's note for $4,300 on which no interest had been paid for nearly 10 years, he executed and delivered to his father his promissory note for $5,500. It is claimed by John Ailes Taft that his father, being indebted to his mother in an amount in excess of $5,500, turned this note over to her and was to be credited for that amount; that in October, 1935, he settled with his mother by delivering to her the father's note for $4,300 which, with interest thereon, was insufficient in the amount of $148 to pay

his $5,500 note then held by her; and that the $148 deficiency was paid by charging his account with the corporation with the sum of $148 and crediting his mother's account with a similar amount. On one occasion he testified that his reason for not paying for the farm with his father's note for $4,300 was because he had forgotten about the same, but later he testified that he was conscious of the existence of the note at that time, but that inasmuch as his father had already drafted the note for $5,500, he signed the same and delivered it in payment for the farm.

John Ailes Taft testified that the partnership records were in his father's possession, and that the books of the Dr. Pierre Chemical Company pertaining to past family accounts were in the possession of the corporation of which he was manager. It would appear to us that these records have evidential value. If true, they would corroborate the testimony of the defendant. The failure to produce such records, together with the failure of the defendant John H. Taft and his wife to testify, is significant. We feel strongly that the failure on the part of defendant John Ailes Taft to produce the books and records which were available to him, and which he claimed would corroborate his testimony, indicates that their production would not have been beneficial to him.

The trial court who heard the testimony and saw the witnesses stated in his opinion that, "the whole transaction is more suggestive of financial manipulation than it is of *bona fides,* and I cannot remove from my mind the significant fact that this whole occurrence took place within about 30 days after the appellate court had entered a judgment against defendant John H. Taft for some $23,000."

The court found that plaintiff had made out a *prima facie* case; that the defendant had not met the burden of proof by showing that the transaction in question was *bona fide*. The testimony of the defendant and his witness, Louis Klass, was vacillating, contradictory and unsatisfactory. A review of the record convinces us that the conclusion of the trial court is correct. In our judgment, the *prima facie* case of plaintiff was not shaken by the testimony of the defense.

Decree affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.